UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GEORGE,

        Plaintiff,

vs.

MOHAMAD H. ELNABTITY, *et al.*,

        Defendants.

                                  /

Case No. 1:09-cv-323

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on Patricia Caruso's and Dr. Haresh Pandya's "motion to dismiss and/or summary judgment" (docket no. 39); Dr. Scott Holmes' "motion to dismiss pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6) (docket no. 52); and Dr. Elnabtity's "motion to dismiss" (docket no. 63).

        **I.**        **Plaintiff's allegations**

Plaintiff's amended complaint named four defendants: Mohamad H. Elnabtity, M.D.; Michigan Department of Corrections (MDOC) Director Patricia Caruso; Scott Holmes, M.D.; and MDOC Regional Medical officer Haresh Pandya, M.D. Plaintiff sets forth the following allegations. He suffered from headaches, vomiting and fainting spells from January 10, 2007 through February 2, 2007. *See* Amend. Compl. "Statement of Facts" at pp.1-3 (docket no. 5-2). On February 2nd, plaintiff underwent surgery at Sparrow Hospital to remove a brain tumor. Amend. Compl. at p. 3 (docket no. 5). The doctors discovered a spinal leak the next day, which required a second surgery. *Id.* He remained hospitalized until February 22nd. *Id.* The medical staff at the

hospital wanted to transfer plaintiff to an MDOC facility so that he could receive follow-up care. *Id.* However, he was released to the correctional facility with 39 staples in his head. *Id.*; Statement of Facts at p. 3. On February 26th, the staples were removed at the "private office" of his doctor and plaintiff was prescribed antibiotics and Motrin. Statement of Facts at p. 3. Plaintiff returned to the hospital on March 5th with a swollen head. *Id.* at p. 4.; Amend. Compl. at p. 3. The doctor drained the swelling with a needle on March 10th and he was returned to the correctional facility. Amend. Compl. at p. 3; Statement of Facts at p. 4. The draining procedure did not work, so he was transported to the hospital on March 24th, where he underwent a third surgery. *Id.* Plaintiff was discharged on April 13, 2007. *Id.* During a checkup on May 8th, plaintiff complained about the inability to move his neck. *Id.* The doctor advised plaintiff that he had removed a bone during the surgery and that plaintiff would require physical therapy before he could regain full mobility in his neck. *Id.* The MDOC's medical provider, Correctional Medical Services, Inc. (CMS), did not approve the physical therapy. *Id.* Plaintiff alleged that he would not be in this predicament if he had not been prematurely discharged by Dr. Elnabtity. *Id.* Plaintiff seeks damages from all defendants, based upon claims of cruel and unusual punishment and lack of follow-up treatment. *See* "Attachments" (docket no. 5-2).

Plaintiff's complaint seeks relief under federal and state law. Plaintiff's federal claim is brought pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United

States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's state claim is directed at the physicians for medical malpractice or negligence.

**II.     Patricia Caruso and Dr. Harsh Pandya's motion for summary judgment (docket no. 39)**

**A.     Legal Standard**

Director Caruso and Dr. Pandya seek summary judgment on various grounds. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff did not file a response to defendants' motion for summary judgment. However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir.1991). "The moving party always bears the initial burden of specifying the basis on which summary judgment should be granted and showing the absence of a genuine issue of material fact and the court is required to examine the motion to determine if that burden has been met." *Neal v. Electronic Arts, Inc.*, 374 F. Supp. 2d 574, 578 (W.D. Mich. 2005), *citing Cacevic v. City of Hazel Park*, 226 F.3d 483, 486, 492 (6th Cir.2000) and *Carver*, 946 F.2d at 454-55.

### B. Lack of Exhaustion

Director Caruso and Dr. Pandya contend that plaintiff failed to exhaust his administrative remedies with respect to his claims against them, which arose in February, March and April 2007. The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

4

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive 03.02.130. Three different versions of this policy directive were applicable during the period in question.[1] While the lettering of the paragraphs is not identical, each of the policy directives contain the following requirements. A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).[2] The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the appropriate grievance coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must file a completed Step III grievance, using the appropriate form.

---

[1] Plaintiff complains of medical treatment received in January, February, March and April 2007. Two different versions of this policy directive applied during the course of that treatment, i.e., a version effective December 19, 2003 and a later version effective March 5, 2007. As discussed, *infra,* the only relevant grievance alleged an incident date of May 30, 2007, but was not dated until December 5, 2007. A third version of the policy directive, with an effective date of July 9, 2007, applied to grievances filed in December 2007. While the lettering of the paragraphs in the three versions is not identical, and slight variations occur, each of the policy directives contain the basic requirements outlined in this report.

[2] The quoted language is from the most recent version of the policy directive (i.e., effective July 9, 2007). However, the earlier version contains similar language.

In his affidavit, Richard B. Stapleton, the Administrator for the Office of Legal Affairs for the MDOC, stated that the agency's Grievance Tracking database shows that plaintiff exhausted only one grievance, IBC-07-12-03487-28a (grievance no. 3487) through the Step III appeal. Stapleton Aff. at ¶¶ 1-15 (docket no. 40-3). Defendants point out that grievance no. 3487 did not name either MDOC Director Caruso and Dr. Pandya. Rather, grievance 3487, with an incident date of May 30, 2007, complained that plaintiff did not receive physical therapy for his neck. *See* Exh. A-2 (docket no. 40-3). Although listing an incident date in May 30, 2007, grievance no. 3487 was dated December 5, 2007 and submitted shortly thereafter. *Id.* Grievance no. 3487 was rejected as duplicative of a more timely grievance filed in or about June 2007, IBC-07-12-03482-12d1 (grievance no. 3482). *Id.* While the record reflects that plaintiff appealed grievance no. 3482 through Step II, there is no record that plaintiff appealed the grievance to Step III. *Id.*

The record reflects that plaintiff filed another Step I grievance on or about December 5, 2007, IBC-07-12-3500-12D1 (grievance no. 3500), which plaintiff stated was "back dated to Jan 17th 2007" complaining of lack of care and delays in medical treatment. *Id.* The grievance was rejected as untimely. *Id.*

In addition, the record reflects that plaintiff had filed another grievance, IBC-07-06-1645-12d (grievance no. 1645), on or about July 3, 2007. *See* Exh. A-3 (docket no. 40-3). Plaintiff has submitted a copy of MDOC correspondence dated July 12, 2007, advising him that the Step II appeal for this grievance was received on July 10, 2007, that the grievance not properly filed and that he needed to return the appeal along with a copy of the Step I grievance and response. *See* Exh. 1 (docket no. 59-2). The July 12, 2007 correspondence includes an additional handwritten note from

August 7, 2007, purportedly from "K. Melle," executive secretary at the MDOC's Region II Bureau of Health Care Services, stating as follows:

> Your grievance cannot be processed until you submit copies of your Step I grievance and response with your Step I appeal. Please attach these and re-submit.

*Id.* Plaintiff again inquired about the Step II appeal for this grievance in a letter dated November 19, 2007, at which time he was advised that: the Step II appeal was rejected on July 10, 2007; the appeal was returned to plaintiff the next day; and that plaintiff did not re-submit the Step II appeal as directed. *See* Exh. A-3 (docket no. 40-3). While plaintiff claims that he was prevented from filing a Step II appeal, he presents no evidence to support his claim other than the correspondence from July and August 2007, which reflects that plaintiff failed to properly submit a Step II appeal.

The record reflects that plaintiff did not properly exhaust any grievance against Director Caruso or Dr. Pandya regarding the matters alleged in this action. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Director Caruso's and Dr. Pandya's motion for summary judgment should be granted.

### III. Dr. Holmes' motion to dismiss (docket no. 52)

### A. Legal Standard

Dr. Holmes seeks to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

7

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Failure to exhaust

Defendant has moved to dismiss this action for lack of exhaustion. "[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009), citing *Jones*, 549 U.S. at 217-220. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially

noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D. Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

Dr. Holmes points out that plaintiff's only exhausted grievance, no. 3487, does not name Holmes or grieve any treatment provided by him. In his response, plaintiff contends that he exhausted a claim against the doctor in grievance no. 1645. *See* Plaintiff's Response (docket no. 55). As previously discussed in § II.B., this grievance was not properly exhausted. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Dr. Holmes' motion to dismiss should be granted.

10

### IV.     Dr. Elnabtity's motion to dismiss (docket no. 63)

Dr. Elnabtity has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to 12(b)(6). In his motion, the doctor contends: that this is a malpractice action; that this court lacks federal question jurisdiction over him; that plaintiff has alleged only state law torts; and that plaintiff has failed to follow Michigan Court Rules regarding medical malpractice claims. The doctor's motion is unopposed.

In determining whether the district court has subject matter jurisdiction of a claim under Rule 12(b)(1), the district court must assume that plaintiff's allegations are true and must construe the allegations in a light most favorable to him. *Little Traverse Bay Bands of Odawa Indians v. Great Spring Waters of America, Inc.*, 203 F.Supp.2d 853, 855 (W.D. Mich. 2002). "Relief is appropriate only if, after such construction, it is apparent to the district court that there is an absence of subject matter jurisdiction." *Id.*

The court agrees that federal subject matter jurisdiction is lacking over Dr. Elnabtity, because he is not a state actor subject to liability under 42 U.S.C. § 1983.[3] It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires a plaintiff to "allege that the medical need

---

[3] The court notes that Dr. Elnabtity raised a federal jurisdictional issue, but did not address this issue in any detail.

is 'sufficiently serious.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001), *quoting Farmer*, 511 U.S. at 834. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Mere negligence in diagnosing or treating a medical condition, on the other hand, does not constitute an Eighth Amendment violation. *Id.* at 835. Thus,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106. *See Comstock*, 273 F.3d at 703 ("a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment"); *Clemmons v. Bohannon*, 956 F.2d 1523, 1529 (10th Cir. 1992) ("the Eighth Amendment does not apply to claims based on inadvertent failure to provide adequate care, negligent misdiagnosis, or an inmate's difference of opinion with medical personnel regarding diagnosis or treatment"). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Here, the issue is whether Dr. Elnabtity falls within the scope of a § 1983 claim in the first instance. The relevant standard for determining whether a doctor treating a prisoner acted

under color of state law for purposes of a § 1983 claim focuses on "the relationship among the State, the physician and the prisoner." *Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009), quoting *West v. Atkins*, 487 U.S. 42, 55-56 (1988).

> There are three tests employed by the courts to determine whether the challenged conduct is fairly attributable to the state: (1) the public function test, (2) the state compulsion test and (3) the symbiotic relationship or nexus test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. Finally, under the symbiotic relationship test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.

*Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996) (internal citations and quotation marks omitted). Thus, "[i]n determining whether a doctor acted under color of state law, the primary factor is 'the physician's function within the state system, not the precise terms of his employment.'" *Scott*, 577 F.3d at 649, quoting *West*, 487 U.S. at 56.

Plaintiff does not allege that Dr. Elnabtity was a prison official, that he was an MDOC employee or that he served any function in the state prison system. The only allegations against the doctor are that he was employed as a surgeon at Sparrow Health System and that plaintiff "would not be in this predicament [i]f I was not released prematurely by Stephanie Brown, P.A.C, in accord with Mohamed H. Elnabtity MD." Amend. Compl. at pp. 2-3. Plaintiff's claim is strictly one for medical treatment by an off-premises doctor. There is no allegation that Dr. Elnabtity was exercising powers particularly reserved to the state. *See, e.g., Rudy v. Village of Sparta*, 990 F. Supp. 924, 930-31 (W.D. Mich.1996) (holding that private physicians cannot be liable under section 1983 for ordering emergency medical procedures based upon their independent medical judgments).

13

Similarly, there is no allegation that Dr. Elnabtity was "compelled" to work for the state or that a "symbiotic relationship" existed between the state and the doctor. Plaintiff has alleged only that Dr. Elnabtity was a surgeon at Sparrow Hospital, who provided him with essentially emergency treatment and follow-up care for a brain tumor. Given these allegations, the doctor cannot be considered a state actor for purposes of liability under § 1983. *See, e.g., Ketola v. Clearwater*, No. 1:08-cv-31, 2008 WL 4820499 at *2-3 (W.D. Mich. Oct. 31, 2008) (in granting motion to dismiss, court reasoned that even if defendant hospital and a treating physician at the hospital "treated [the prisoner plaintiff] at the state's request and expense, they did not thereby become state actors"). Plaintiff has not alleged any federal constitutional claim against Dr. Elnabtity. Accordingly, Dr. Elnabtity's motion to dismiss should be granted as to plaintiff's § 1983 claim.[4]

## V. State law claims

The remainder of plaintiff's claims against defendants involve violations of Michigan state law, i.e., either negligence or medical malpractice. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court initially exercised its supplemental jurisdiction over plaintiff's state law claims because those claims appeared intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental

---

[4] Even if plaintiff had alleged and could show that Dr. Elnabtity was a state actor, his Eighth Amendment claim would fail. Plaintiff faults Dr. Elnabtity for prematurely releasing him from the hospital. This type of claim alleges no more than negligence. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Farmer*, 511 U.S. at 835; *Comstock*, 273 F.3d at 703.

14

jurisdiction for state law claims against these defendants. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the court has rejected all of plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the court should dismiss plaintiff's state law claims for negligence or medical malpractice.

**VI. Recommendation**

For the reasons set forth above, I respectfully recommend that Director Caruso's and Dr. Pandya's motion for summary judgment (docket no. 39), Dr. Holmes' motion to dismiss (docket no. 52), and Dr. Elnabtity's motion to dismiss (docket no. 63) be **GRANTED** and that plaintiff's remaining state law claims be dismissed.


Dated: July 19, 2010                    /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).